Filed 7/29/24  Rocha v. County of Fresno CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DANIEL ROCHA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF FRESNO, <br><br> Defendant and Respondent. | F084512 <br><br> (Super. Ct. No. 20CECG01193) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Kevin Gerard Little for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Jesse J. Maddox, and Morgan Johnson for Defendant and Respondent.

-ooOoo-

Plaintiff and appellant Daniel Rocha is a former employee of the County of Fresno (County). County terminated Rocha's employment after it determined Rocha had violated several County personnel rules. Thereafter, Rocha filed suit alleging County had violated the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) by (1) discriminating against him on the basis of his medical conditions and physical disability, (2) retaliating against him for making protected complaints pertaining to his medical conditions and physical disability, and (3) failing to prevent the alleged acts of discrimination and retaliation.

County moved for summary judgment or, alternatively, summary adjudication of the three causes of action in Rocha's complaint. The trial court granted County's motion for summary judgment and entered judgment in its favor. Rocha appeals.

We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Rocha was first hired by County in 2005 to work as a social worker in its Department of Social Services (DSS). While employed at DSS, Rocha developed two injuries for which he required workplace accommodations. Specifically, in 2009, he began experiencing carpal tunnel syndrome and, in 2016, he developed a bulging disc in his back. DSS accommodated Rocha's medical conditions, in part, by changing his work assignments and reducing his typing and computer time.

According to Rocha, he received positive performance reviews while at DSS. However, given his physical limitations and the extensive work requirements of his position at DSS, Rocha decided to seek transfer to the Fresno County Library (County Library).

## I. Rocha's Employment with County Library

### A. Rocha's Early Complaints About County Library's Business Manager

On November 7, 2016, Rocha transferred to County Library as a senior staff analyst. He was to be trained in his new position by his direct supervisor, Business

2.

Manager Jeannie Christiansen. During his employment at County Library, Rocha developed a long list of grievances against Christiansen.

In June 2017, Rocha began keeping "contemporaneous notes" of incidents that occurred at County Library. In his declaration in opposition to County's motion for summary judgment (opposition declaration), Rocha states that on June 2, 2017, Christiansen scolded and undermined him in front of other employees. His notes for that date indicate Christiansen had been on several long vacations and that Christiansen "mentioned baptism by fire," which he felt was rude. Little additional detail is provided, but Rocha concluded Christiansen had "belittled, and verbally assaulted [Rocha]" and "was undermining [Rocha's] authority."

In his opposition declaration, Rocha states that Christiansen belittled Rocha again during a training session on June 6, 2017. In his notes for that date, Rocha wrote, "I asked [Christiansen] to train me in her office because she tends to get aggressive in front of people to show off. This is belittling to me and undermines my authority with staff. She does this in front of my employees." In over 40 entries dated June 2017 through August 2018, Rocha complains about other conduct and behavior of Christiansen that Rocha described as "threatening," "bully[ing]," engaging in a "game of power," "hostile," "demanding," "rude," "sarcastic," "moody," and "condescending"—among other descriptors.

In his opposition declaration, Rocha states Christiansen effectively denied or impeded his leave requests by approving them on an unrealistic condition he finish multiple assignments, by waiting until the last minute to approve them, or by failing to give him "approved leave slips." Rocha claims Christiansen used the approval of leave requests as a "form of discipline."[1]

---

[1]    Rocha also claims Christiansen denied him FMLA leave. However, in the e-mail(s) Rocha refers to in support of this latter claim, Rocha admits he had not received FMLA paperwork from a doctor at the time the request was made.

Rocha also claims Christiansen pitted his subordinates against him, for example, by telling staff that Rocha "wanted to discipline all of the employees" after Rocha had discussed Christiansen's alleged failure to follow proper procedure in approving other employees' leave requests with her.

Other complaints lodged by Rocha against Christiansen include, without limitation, her making a derogatory statement about his "gray hair"[2] and refusing to allow him to park in a particular County Library parking lot even though he "was the only member of senior administration not allowed to park in [the] lot."

Rocha believes the problems he was having with Christiansen began to worsen in November 2017, after he was asked to provide feedback on Christiansen's performance as a supervisor. The request came from Christiansen's direct supervisor, County Librarian Kelley Landano, who was performing a "360" degree review of Christiansen's job performance. Rocha complied with the request. Although Rocha provided several positive comments to Landano concerning Christiansen's management style, he was also very critical of Christiansen's performance as a manager. Rocha claims that, after Christiansen received her performance review, she avoided speaking to him for weeks and, when she did speak to him, she was terse.

In January 2018, Rocha was given supervisory authority over a new hire, Rachel Acosta, during her probationary period. At Christiansen's direction, Rocha put Acosta on a performance improvement plan and provided her with "weekly counseling memos to help improve her work." According to Rocha, counseling memoranda are not direct disciplinary actions. Notwithstanding, Rocha contends Acosta "became very defensive toward [him]," which led him to arrive at the "understanding" Acosta was told by Christiansen that the performance improvement plan was his decision and not Christiansen's.

---

[2]     Rocha has not alleged a cause of action for age discrimination.

Then, in May 2018, Rocha gave a counseling memorandum to Acosta, which led Acosta to meet with Christiansen. Rocha contends Acosta reported to Christiansen things Rocha "was allegedly stating about" Christiansen, and this led Christiansen to request a meeting with Associate County Librarian Raman Bath[3] and Cindy Freeland, a human resources (HR) representative. In a declaration in support of County's motion for summary judgment, Bath acknowledged meeting with Christiansen and Acosta and was told Rocha was "misrepresenting to his subordinates … Christiansen's communications to him." Bath started a preliminary investigation but then put it on hold because he thought a "cooling off period" might resolve the issues. (He would later receive additional information from Acosta that would cause him to resume and complete his investigation.)

Soon after May 30, 2018, Rocha took time off for his back injury. He states he requested Christiansen keep the information confidential but claims Christiansen violated this request by writing his return date as "Back" by a certain date, rather than "Return" by a certain date, on the whiteboard where employee attendance statuses were recorded.

### B. Rocha Files a Workers' Compensation Claim

On June 13, 2018, Rocha filed a workers' compensation claim relating to his carpal tunnel syndrome. In his opposition declaration and accompanying notes for that same date, Rocha claims Christiansen sent an e-mail to his staff that belittled him and undermined his authority. Rocha does not state what was in the e-mail and provides no citation to any e-mail in the record on appeal. He states in his notes for that date entry, "I am beginning to think that [Christiansen] has been *retaliating against me due to the 360* [*degree review*] *on her*. [Christiansen] was very unsupportive today." (Italics added.)

---

[3]    Raman Bath has held several positions since Rocha first started at County Library. Bath served as associate county librarian from November 2017 to February 2019. Thereafter, he served as interim county librarian for approximately five months before succeeding to the position of county librarian in July 2019.

5.

On June 14, 2018, Christiansen gave Rocha a counseling memorandum expressing her concern that Rocha was providing insufficient notice for some of his leave requests. Included with the memorandum was a copy of County Library's policies concerning leave for medical appointments and other circumstances.

After Rocha filed his workers' compensation claim, County performed an ergonomic evaluation of his workspace. The resulting report indicated Rocha was not previously under any work restrictions. Several adjustments to his workstation were recommended, including, without limitation, an option to have a sit-stand desk and an ambidextrous mouse that could be operated by either hand. In addition, Rocha was advised to "[c]ontinue stretching and moving around throughout the day" and "[t]ake breaks and microbreaks."

Rocha claims Christiansen "retaliated against [him] due to [his] injury" by, among other things: giving him more assignments; requiring he handwrite his work for others to type, which he claims let everyone know of his medical issues; giving him counseling memoranda because he exceeded his computer time restrictions; monitoring his computer usage to ensure he was adhering to his typing restrictions; and including in his final performance review, a comment that he was failing to adequately supervise and train his employees, which he contends was not practical because his assignments took him "far away from [his] staff for an extended period of time with no access to them or their work."

In addition, Rocha states he was counseled by Christiansen for not following proper procedures in ordering an ambidextrous mouse to meet his workers' compensation restrictions (although he was allowed to keep the mouse) and for having his monitors too high when his desk was in the standing position.

### C.    *Rocha Files an HR Complaint*

On August 8, 2018, Rocha filed an internal complaint against Christiansen (HR complaint). He alleged Christiansen had been belittling and degrading him for over

6.

a year and a half, overloading him with work, and sending him "negative and/or hostile e[-]mails" on a daily basis. In his HR complaint, Rocha recounted many of the issues discussed *ante*. He suggested he was being treated this way because he was *male*.**4**

Rocha also complained he felt threatened and intimidated by Christiansen. He accused her of being rude to him in front of employees by shouting, "Just do it," when he questioned one of her directives, criticizing his job performance and reprimanding him in front of other employees, pitting his staff against him, and blaming him for work that she should have done herself.

Rocha alleged Christiansen was "trying to sabotage" him and stated, "There are too many unethical things to list here about what [she] has done within [County] Library to employees. Her main course of action is to withdraw genuine support, overload employees and not train them, blame employees, and then run down the list of negative actions towards employees." The HR complaint reads, in part, "other staff have complained about the way they were treated by [her] in meetings. He alleged other employees have left because of her behavior. He reiterated his claim that Christiansen used the approval of leave requests as a "form of discipline."

### D.      *Investigation of Rocha's Allegations by Outside Counsel*

On August 29, 2018, County hired an outside investigator, Attorney Amy Oppenheimer, to investigate matters raised by Rocha in his HR complaint. Oppenheimer interviewed nine witnesses, including Rocha, Christiansen, Bath, Freeland, Acosta, and Rocha's other supervisees. Oppenheimer also reviewed a number of documents, including Rocha's seven-page complaint against Christiansen, Rocha's notes concerning interactions with Christiansen, Christiansen's notes concerning interactions with Rocha, and numerous e-mails at issue. Oppenheimer did not sustain any of Rocha's accusations against Christiansen.

---

**4**      Rocha has not alleged a cause of action for discrimination on the basis of sex or gender.

### E. Bath Receives New Information that Causes Him to Resume His Investigation of Complaints against Rocha

On November 15, 2018, Acosta provided Bath and Freeland with additional information, which prompted Bath to resume his previous investigation of complaints against Rocha. Bath conducted 22 interviews of eight individuals, including Rocha, Christiansen, Acosta, and Rocha's other supervisees.

### F. Rocha's Final Job Performance Review

On January 14, 2019, Rocha received his employee performance evaluation for the period of November 7, 2017, to December 11, 2018 (2018 performance evaluation). The evaluation was 20 pages in length. In the eight general skills categories, Rocha received four "Unsatisfactory" ratings, three "Improvement Needed" ratings, and one "Satisfactory" rating. In the seven supervisory ability categories, he received two "Unsatisfactory" ratings, two "Improvement Needed" ratings, and three "Satisfactory" ratings.[5] Rocha received an overall rating of "Improvement Needed" in his 2018 performance evaluation.

### G. Investigative Report by Bath, Skelly[6] Review, and Termination of Rocha's Employment

On February 7, 2019, Bath issued an investigative report concerning allegations Rocha "inappropriately … delegated complex tasks and assignments to subordinate staff" and had "done so willfully"; was "insubordinate as it relate[d] to instructions and

---

[5] In his 2018 performance evaluation, Rocha was rated in eight general skills categories as follows: (a) "Unsatisfactory" in "Responsiveness," "Rules, Regulations," "Interpersonal Skills," and "Professional Skills"; (b) "Improvement Needed" in "Quantity of Output," "Quality of Output," and "Technical Skills"; and (c) "Satisfactory" in "Attendance."

Rocha was further rated in seven different supervisory ability categories as follows: (a) "Unsatisfactory" in "Leadership" and "Communication"; (b) "Improvement Needed" in "Planning and Organization" and "Decision Making"; and (c) "Satisfactory" in "Safety," "Affirmative Action," and "Attendance."

[6] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*).

direction from [Christiansen]"; and had "made unprofessional, highly charged and negative comments about [Christiansen] in the presence of [Rocha's] subordinate staff. Because Rocha denied the allegation regarding negative comments made toward Christiansen, Bath chose to "include[] dishonesty on the list of misconduct and the final report."

In his investigative report, Bath was unable to "come to the clear conclusion that [Rocha] ha[d] been insubordinate" by inappropriately delegating work to subordinates. He sustained the allegation Rocha had made negative and unprofessional comments about Christiansen to subordinates. In that regard, he determined Rocha's conduct was "unprofessional and has had a detrimental impact on the morale and productivity of staff … as well as the potential to undermine the authority of [Christiansen] as well as Library Administration as a whole."[7] Bath also sustained the allegation of dishonesty, concluding that "there is no doubt that [Rocha] has readily lied about his actions and the inappropriate remarks he has made regarding [Christiansen]." According to Bath, several witnesses had corroborated Rocha's remarks, and Rocha's "own rebuttal/statement contains examples of how he finds [Christiansen] to be untrustworthy, incompetent, and otherwise a poor manager." He determined those witnesses were credible and that the allegation was supported by a preponderance of evidence.

On February 21, 2019, County issued Rocha a notice of intended order for disciplinary action (notice of intended action) that recommended Rocha's employment

---

[7]    Witnesses interviewed for Bath's investigative report reported that Rocha made comments in reference to Christiansen such as: (1) she is "a 'bitch or bitchy' "; (2) she "is 'really hard to work with' " and "can be 'bitchy and a hard ass' "; (3) she " 'is out to get' " him and Acosta; (4) "you have to be careful around [Christiansen]"; (5) she cannot be trusted and " 'is out to get people' "; (6) " 'be careful what you say around her' and that she 'doesn't understand what she is doing' "; (7) she " 'can go off on you so be careful' "; (8) she is " 'mean, she is unfair, and she will find ways to put you down' "; and (9) she is " 'mean' and can be 'difficult to work with.' "

with County be terminated.  In lieu of a *Skelly* conference,[8] Rocha's attorney of record provided a written response to the notice of intended action.

Paul Nerland, who, at the time, was director of HR for County, served as a *Skelly* officer for County and conducted a *Skelly* review in connection with the notice of intended action.  In his declaration in support of County's motion for summary judgment, Nerland stated he found no "evidence suggesting [Rocha's] proposed termination was retaliatory or biased" and determined "Rocha had been insubordinate, and then was dishonest about his conduct when questioned" by Bath.  He added, "The Senior Staff Analyst position is a senior management position that requires a higher latitude of judgment and a high degree of maturity, integrity and good judgment.  I felt that, based on the information provided to me, … Rocha lacked those qualities; therefore, I upheld the proposed termination."

On March 8, 2019, Bath issued an order for disciplinary action against Rocha and advised Rocha that he would be "dismissed from [his] County position effective 5[:00] p.m., March 8, 2019."  (Underlining omitted.)

## II.    Rocha's Superior Court Complaint

On May 4, 2020, Rocha filed suit against County.  His three causes of action are summarized below.

In his first cause of action, Rocha alleged County engaged in medical/disability discrimination against him in violation of FEHA.  He alleged his physical conditions qualified as medical conditions and disabilities under FEHA because they limited "his performance of one or more major life activities," a fact known to County; he was

---

[8]    In *Skelly*, *supra*, 15 Cal.3d 194, the California Supreme Court "announced the minimum requirements for a pretermination hearing for a public employee:  'notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline.' " (3 Witkin, Summary of Cal. Law (11th ed. 2017) Agency and Employment, § 312, p. 402, citing *Skelly*, at p. 215.)

subjected to harassment and adverse personnel actions including termination by County, which treatment was motivated by his medical conditions and disabilities; he was "performing his duties well and could have continued to perform them well had he received timely and reasonable accommodations"; and, as a result, he suffered damages, which included lost wages and benefits, emotional injury, and physical injury.

In his second cause of action, Rocha alleged he was retaliated against by County in violation of FEHA for making "qualifying complaints" about being denied accommodations for his medical conditions and disabilities and about suffering reprisals from County for those complaints. He alleged this led to further harassment and adverse personnel actions by County and its employees.

In his third and final cause of action, Rocha alleged County violated FEHA by failing to "take all reasonable steps to prevent" the discrimination and retaliation he experienced.

## III.    Proceedings

On July 29, 2021, County moved for summary judgment against Rocha or, in the alternative, summary adjudication of all causes of action therein. On February 10 and 14, 2022, Rocha filed papers in opposition to County's motion.[9] On February 18, 2022, County filed its reply papers.

The trial court issued its tentative ruling to grant County's motion for summary judgment on June 7, 2022. County's motion was heard the following day, June 8, 2022, after which the court took the matter under advisement. On June 9, 2022, the court adopted its tentative ruling without modification.

---

[9]    Rocha's declaration in opposition to County's motion was referenced in his February 10, 2022 attorney's statement of facts in opposition to County's motion but, for reasons not apparent from the record, his declaration was not filed with the trial court until May 17, 2022.

11.

Rocha filed his notice of appeal on June 21, 2022, before judgment had actually been entered. Over one year later, on July 21, 2023, the trial court entered judgment in favor of County and against Rocha.

Additional factual information is discussed below as necessary.

## DISCUSSION

### I. Appealability

Rocha filed his notice of appeal shortly after the trial court granted County's motion for summary judgment but a year before the trial court actually entered judgment in favor of County. "An order granting summary judgment is not an appealable order." (*Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288; accord, *Saben, Earlix & Associates v. Fillet* (2005) 134 Cal.App.4th 1024, 1032.) "However, when the order is followed by a judgment, the appellate court may deem the premature notice of appeal to have been filed after the entry of judgment." (*Mukthar*, at p. 288; accord, Cal. Rules of Court, rule 8.104(d)(2).) Consequently, we will treat the notice of appeal as having been from a judgment after an order granting a summary judgment motion, which is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(1).)[10]

### II. Standard of Review

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) " ' "[A]lthough we use a de novo standard of review here, we do not transform into a trial court." ' [Citation.] We approach a summary judgment appeal, as with any appeal, with the *presumption the appealed judgment is correct*. [Citation.] Therefore, ' " '[o]n review of a summary judgment, *the appellant has the burden of showing error*, even if he did not bear the

---

[10] Undesignated statutory references are to the Code of Civil Procedure.

burden in the trial court.' " ' " (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684, italics & second & third bracketed insertions added.)

" ' "Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments." ' [Citation.] Because it is the Appellants' burden to affirmatively demonstrate error, they must provide citations to the appellate record directing the court to the evidence supporting each factual assertion." (*Meridian Financial Services, Inc. v. Phan*, *supra*, 67 Cal.App.5th at p. 684.) "It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations." (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205.) The failure to present argument, cite legal authority, or provide adequate record citations will result in a waiver or forfeiture of the issue. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*); *Talley v. County of Fresno* (2020) 51 Cal.App.5th 1060, 1091 [failure to make substantive argument in challenge to trial court's dismissal of claim on summary judgment results in a waiver of the claim].)

## III. Rocha Has Failed to Provide Sufficient Record Citations on Appeal

With only sparse exception, Rocha has failed to cite to any of the *actual* evidence he submitted in opposition to County's motion in his appellate briefs. Instead, he cites to a document titled "Plaintiff's Statement of Fact in Support of Opposition to Motion for Summary Judgment or [in] the Alternative Summary Adjudication" (boldface & some capitalization omitted) (hereafter, attorney's statement of fact), which is signed only by Rocha's counsel and has no declaratory paragraph attesting, under penalty of perjury, to the truth and correctness of the information contained therein. Similarly, Rocha does not cite to any of the undisputed material facts alleged in County's motion.

In addition, the exhibits referenced in the attorney's statement of fact are identified by incorrect exhibit numbers and vague verbal descriptions. Rocha's opposition declaration appears to be identical to the attorney's statement of fact, but it suffers from

13.

the same deficiencies when it comes to identifying referenced exhibits. Rocha relies on exhibits at various points in his opposition brief but provides no citations to page numbers for the exhibits or for any specific reference therein.

Aside from the occasional citation to pleadings, motion paperwork, or court orders, Rocha fails to provide any correct citations for the multitude of exhibits he references in his appellate briefing, making it difficult and arguably impossible, in some circumstances, to identify with certainty which exhibits Rocha is intending to reference. A similar deficiency at the trial court level led County's counsel to state, "[T]he exhibits to [Rocha's] declarations are not remotely in the order he represented; rather, it appears he shuffled his exhibits like one might shuffle a deck of playing cards."

"[D]e novo review does not obligate [an appellate court] to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. [I]t is the appellant's responsibility … to point out the triable issues the appellant claims are present by citation to the record and any supporting authority." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116, disapproved on other grounds in *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 CalApp.4th 26, 41–42; see *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [" 'The appellate court is not required to search the record on its own seeking error.' "]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 ["If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived."]; *Bernard v. Hartford Fire Ins. Co.*, *supra*, 226 Cal.App.3d at p. 1205 ["It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations."].) Moreover, " '[w]e are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.' " (*Hernandez*, *supra*, 37 Cal.App.5th at p. 277, first bracketed insertion added.)

14.

We deem Rocha's near complete failure to provide citations to evidence and exhibits as a forfeiture of his claims on appeal. Notwithstanding, we address the merits of Rocha's forfeited claims below.

## IV. Summary Judgment Procedure, Generally

A defendant "may move for summary judgment in an action or proceeding if it is contended that the action has no merit." (§ 437c, subd. (a)(1).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) In determining whether to grant a motion for summary judgment, a court will view evidence submitted "in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party." (*Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 864, citing § 437c, subd. (c).)

"[I]n moving for summary judgment, a 'defendant … has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action … cannot be established, or that there is a complete defense to that cause of action. Once the defendant … has met that burden, the burden shifts to the plaintiff … to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*), quoting § 437c, subd. (o)(2).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.)

## V. Summary Judgment in the Context of FEHA Discrimination Claims

Summary judgment procedure in the context of FEHA discrimination claims has its own special characteristics. "… California has adopted the three-stage burden-shifting test[, the *McDonnell Douglas* test,] established by the United States Supreme Court for

15.

trying claims of discrimination … based on a theory of disparate treatment." (*Guz, supra*, 24 Cal.4th at p. 354, citing, among others, *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.) The test, when applied in the context of a summary judgment motion, differs from its application at trial. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 160).

"At *trial*, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination." (*Guz, supra*, 24 Cal.4th at p. 354, first italics added.) To do so, the plaintiff "must at least show ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion ….' " ' " (*Id*. at p. 355.) Once the plaintiff meets this initial burden, "a [rebuttable] presumption of discrimination arises." (*Ibid*.) "[T]he burden [then] shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason." (*Id*. at pp. 355–356, first & second bracketed insertions added.) "If the employer sustains this burden, the presumption of discrimination disappears." (*Id*. at p. 356.)

If the employer has successfully rebutted the presumption of discrimination, the plaintiff has the "opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. [Citations.] In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias. [Citations.] The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." (*Guz, supra*, 24 Cal.4th at p. 356.)

In contrast, a defendant employer seeking summary judgment in connection with a plaintiff employee's FEHA discrimination claim has "the initial burden to either (1) negate an essential element of [the plaintiff's] prima facie case [citation] or

16.

(2) establish a legitimate, nondiscriminatory reason" for taking the challenged adverse employment action. (*Wills v. Superior Court*, *supra*, 195 Cal.App.4th at p. 160; see *Aguilar*, *supra*, 25 Cal.4th at p. 850 ["from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law"].)

"If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment *unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing*." (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344 (*Arteaga*).) Again, in that instance, the evidence to rebut the moving parties' evidence must be sufficient to "allow a reasonable trier of fact to find the underlying fact in favor of" the plaintiff. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

## VI. Analysis

County moved for summary judgment or, alternatively, summary adjudication of each of Rocha's three causes of action.

### A. *Elements of Rocha's Causes of Action*

Rocha's first cause of action is for discrimination in the workplace based on a physical disability or medical condition. To make out a prima facie case of discrimination, Rocha must show "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz*, *supra*, 24 Cal.4th at p. 355.)

Rocha's second cause of action is for retaliation in the workplace after he allegedly made "qualifying complaints against his lack of medical/disability accommodation, and also about being subject to reprisal for his complaints." To make

17.

out a prima facie case of retaliation by his employer, Rocha must prove (1) he " 'engaged in a protected activity,' " (2) his " 'employer subjected him to adverse employment action,' " and (3) " 'there is a causal link between the protected activity and the employer's action.' " (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 814.)

To prevail on a claim his employer failed to prevent discrimination or retaliation, Rocha must prove (1) he was subject to discrimination or retaliation by his employer, (2) the employer "failed to take all reasonable steps to prevent discrimination, … or retaliation," and (3) as a result of the employer's failure, Rocha "suffer[ed] injury, damage, loss or harm." (*Lelaind v. City and County of San Francisco* (N.D.Cal. 2008) 576 F.Supp.2d 1079, 1103; accord, CACI No. 2527.)

### B. County's Grounds for Moving for Summary Judgment/Summary Adjudication

County challenged Rocha's first cause of action for discrimination under FEHA on grounds Rocha could not "establish he was competently performing [in] his position," "prove a discriminatory motive," or show that any "allegedly harassing comments or conduct toward him [were] based on his alleged disabilities or complaints."

County challenged Rocha's second cause of action for retaliation under FEHA on grounds his e-mail sent to County Librarian Landano to provide feedback as part of the 360-degree review of Christiansen's performance as a manager was not a FEHA-protected complaint and that Rocha could not "show a nexus between his protected activities and any adverse action taken by … County."

In addition, County contended it "had legitimate, non-discriminatory, non-retaliatory reasons for terminating [Rocha's] employment and allegedly changing his job assignments."

Finally, County contended Rocha's inability to establish a claim for either discrimination or retaliation precludes recovery for failure to prevent such conduct. And

that, even if any of those claims were determined to be viable, he could not prevail on the claim because County "conducted a prompt, good faith investigation of his claims."

### C. The Trial Court's Determinations and Rocha's Arguments on Appeal

Among other things, the trial court determined that County had "met its burden of presenting evidence indicating that [Rocha] was not performing competently at his job in the months before he was fired"; Rocha had "not pointed to any admissible evidence that tends to show a triable issue of material fact with regard" to that issue, or that "tends to show that he was not having significant problems with his job performance in the final year of his employment"; County had "met its burden of showing it had legitimate, non-discriminatory and non-retaliatory reasons for terminating" Rocha's employment; and Rocha had not raised a triable issue of material fact that "County intended to discriminate or retaliate against him."

Rocha does not argue that County failed to meet its initial burden on summary judgment. Moreover, in presenting his argument on appeal, Rocha does not separately discuss each cause of action. Rather, Rocha broadly contends he created triable issues of fact as to whether he was performing his job competently and whether the reasons given for his termination were pretextual.

Rocha appropriately discusses the law pertaining to summary judgment motions in the context of FEHA discrimination claims and the trial court's evaluation of the case and its identification of Rocha's contentions in opposition to the motion for summary judgment. However, Rocha devotes little space to discussing and citing facts in the argument section of his appellate brief.

### 1. No Triable Issue of Material Fact Was Shown on the Question of Whether Rocha Was Competently Performing His Job Duties

Rocha's first point in support of his argument is that he provided the trial court with a rebuttal of his 2018 performance evaluation. However, he fails to discuss any specific rebuttal information in his argument that he contends might show he was

performing his job duties competently, and he provides no citations *anywhere* in his brief to any information contained in his rebuttal. As a consequence, we are largely left to guess which facts he contends raises a triable issue of fact concerning his competence in performing his job duties. "An appellate court is not required to search the record to determine whether or not the record supports appellants' claim of error. It is the duty of counsel to refer the reviewing court to the portions of the record which support appellants' position." (*Green v. City of Los Angeles* (1974) 40 Cal.App.3d 819, 835.) Nor is an appellate court required to make arguments for the parties. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Rocha next contends that the minutes of a meeting of the San Joaquin Valley Library System Administrative Council indicate the council is soliciting requests for quotes from outside certified public accountancy firms to handle County Library's budgeting process. Rocha claims this "allud[es] to the fact that if one person had to perform these tasks, they would burn out." We disagree.

Rocha did not provide a citation to the referenced entry in the San Joaquin Valley Library System Administrative Council minutes. The only such reference we have identified in those minutes reads, in full:

> "**5. Status Update:  Accounting, Bookkeeping and Controller Services.**
>
> > "• **Moving forward on RFQ[11] ASAP and if anyone would like to assist.**
> >
> > "[Bath] provided [an] update of what he would like to have[—]a [Certified Public Accountant] firm as the fiscal consultant, controller and accounting services with quality, clarity, and cost effective[ness]. Fresno County role as fiscal agent shall be separate and independent from administration. [Christiansen] in the future will no longer be the controller and present at board meetings. This role will be included in the RFQ transition to local [Certified Public Accountant] firm.

---

**11**   The acronym "RFQ" is not defined in the record on appeal. From its context, we presume it stands for "request for quote."

> [Attorney John] Shupe assisted in this matter.  Board express[ed] support they would like to continue to have clarity and simple presentation of reports so they can be understood."

The above minute entry does not warrant the inference Rocha would like this court to draw from it—i.e., that, if a single person was assigned to handle the budget, that person would burn out.

Rocha also points to the fact that he completed two budgets (i.e., a half-year budget & a full-year budget) and contends this "is proof upon itself that [Rocha] was performing his job well."  While we do not intend to downplay the importance of preparing budgets or the challenges in doing so properly, Rocha cannot rely simply on the completion of two tasks to raise a triable issue of competent performance.  Notably, Rocha does not provide any details concerning the time devoted to, or the efforts involved in, preparing or completing the budgets.  He provides no discussion that would enable a reasonable trier of fact to conclude the completion of these two tasks alone demonstrates his competence in performing his job duties.

Moreover, the fact that Rocha may have completed two budgets does not begin to address the myriad of deficiencies in his performance catalogued in his 2018 performance evaluation.  That evaluation stated there was "a notable change in [his] work including policy violations, decline in performance, conduct infractions, and unauthorized office equipment purchases."  Rocha does not present any argument that other job duties discussed in his 2018 performance were performed competently.

The 2018 performance evaluation contains detailed information to the effect that Rocha left work unfinished work, failed to adhere to numerous guidelines, and was often unwilling to perform assigned tasks.  It states he assigned tasks to subordinates after having been expressly counseled not to do so, inappropriately delegated complex agenda items to entry level staff while not completing any such tasks himself, and failed to adequately monitor those to whom he assigned important tasks.  The evaluation further states Rocha failed to provide needed guidance and training to staff under his supervision

21.

and blamed his staff for matters that were within his responsibilities when complaints came in from other County Library divisions or departments.  The evaluation indicates he failed to review budget formulas and estimates, which "led to the budget being overspent by $8,300."  It further states Rocha was inconsistent and often unwilling to provide required reports and would fail and sometimes refuse to follow express directives in that regard.  The evaluation also details Rocha's inability to communicate effectively with "support staff, colleagues, and [m]anagers."  Additional instances of deficient performance are detailed with specificity in the evaluation.

Rocha also asserts that he was in a "catch-22" by "providing him with tasks and then either docking him for not completing or docking him for going over his computer time."  He contends this shows his 2018 performance evaluation "was ill conceived and only completed with the intent to retaliate against him."  Rocha provides no additional explanation in this regard.  In any event, this assertion does not tend to show that he was competently performing in his position as senior staff analyst.

Finally, Rocha contends Bath was "not unbiased."  However, the evidence he cites to (one of the rare times he cites to actual evidence) was objected to by County, and the objection was sustained by the trial court.  Rocha does not challenge any of the court's evidentiary rulings.[12]

---

[12]    In his opposition declaration, Rocha provides some excuses for his subpar performance in certain areas.  Specifically, Rocha contends he was unable to adequately supervise his subordinates because his assignments took him "far away from [his] staff for an extended period of time with no access to them or their work."  He also said he was not always given his subordinates' work to review and suggests his computer-work restrictions also impeded his ability to review their work.  Rocha makes no argument, however, that these excuses for subpar performance should be viewed by this court as evidence of competent performance.  " 'We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.' " (*Hernandez*, *supra*, 37 Cal.App.5th at p. 277.)

We conclude the facts Rocha relies on in his brief on appeal are insufficient to create a triable issue of material fact concerning whether he was competently performing in the position of senior staff analyst.

> 2. *No Triable Issue of Material Fact Was Shown on the Question of Whether County's Reasons for Terminating Rocha's Employment Were Pretextual*

"If the employer meets its initial burden [by showing it had legitimate, nondiscriminatory reasons for taking an adverse employment action], the plaintiff then has the burden to produce 'substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' " (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003, quoting *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005 (*Hersant*).)

" 'The [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. [Citations.] Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [the asserted] non-discriminatory reasons." ' " (*Hersant*, *supra*, 57 Cal.App.4th at p. 1005.)

Rocha contends he provided evidence sufficient to show the reasons given for his employment termination were pretextual. In this regard, Rocha first points to the alleged bias of Christiansen in performing Rocha's 2018 performance evaluation. However, Rocha fails to point out any evidence that suggests discriminatory animus against him

based on a medical condition or physical disability.  He merely states his conclusion that bias was "clearly established."

Rocha also criticizes Bath and the investigation that led to Bath's February 7, 2019 investigative report.  Rocha contends that, during a training session in 2017, "Bath specifically asked [a] County attorney, if he was to find during his investigation that an employee was 'dishonest', could he avoid the normal progressive disciplinary process and recommend immediate termination.  At this time, … Bath was asking because he was handling a specific investigation regarding two County employees .…"  According to Rocha, the County attorney replied that dishonesty "would be grounds for immediate termination."  This query by Bath was, by Rocha's own admission, unrelated to him and does not tend to demonstrate a pretextual reason for terminating Rocha's employment.

Rocha also contends Bath would only allow him to answer "yes" or "no" to questions Bath put to him and that he could not say he did not remember or recall the answer.  However, Rocha does not provide any substantive information concerning the questions and answers given, and which ones he would have answered with either "I don't remember" or "I don't recall."

As a final matter, Rocha states the court erred by determining the temporal proximity between his requests for medical/disability accommodation and his 2018 performance evaluation was insufficient, by itself, to establish pretext.

"In the classic situation where temporal proximity is a factor, an employee has worked for the same employer for several years, has a good or excellent performance record, and then, after engaging in some type of protected activity—disclosing a disability—is suddenly accused of serious performance problems, subjected to derogatory comments about the protected activity, and terminated.  In those circumstances, temporal proximity, *together* with the *other* evidence, may be sufficient to establish pretext." (*Arteaga*, *supra*, 163 Cal.App.4th at pp. 353–354.)  " 'To prevent future litigants from relying on temporal proximity alone to establish [pretext], we once again attempt to

24.

clarify the issue.… "[C]ases that accept mere temporal proximity … as sufficient evidence of causality *to establish a prima facie case* uniformly hold that the temporal proximity must be 'very close.' " … [T]o be persuasive evidence, temporal proximity must be very close, and importantly … temporal proximity alone, when very close, can in some instances establish a *prima facie case* of [discrimination or] retaliation.… But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of [pretext]. Such a rule would unnecessarily tie the hands of employers." (*Id*. at p. 354.)

" 'Employers are sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace.… Precedent does not prevent [an employer] from removing such an employee simply because the employee [recently] engaged in a protected work activity .…' " (*Arteaga*, *supra*, 163 Cal.App.4th at p. 354.)

Rocha argues he was a County employee "for over eleven years and had only received positive evaluations up to the last and final evaluation." This ignores the fact that Rocha was with DSS for the bulk of that time and was only a County Library employee for two evaluation periods. He admits he had no prior experience in the position of senior staff analyst and that he had to be trained for the position. Comparing his performance at DSS to his performance at County Library is akin to comparing apples to oranges.

Rocha also argues he "had filed multiple accommodation requests and had filed complaints against [Christiansen]," and that "[o]nce this was done, this same supervisor began her multiple discriminatory actions against him." However, Rocha has not shown any discriminatory animus on the part of Christiansen tied to his medical condition or physical disability.

Moreover, the temporal proximity between Rocha's complaints against Christiansen or his workers' compensation claim, on the one hand, and his employment

termination, on the other hand, was not very close in time. His latest complaint against Christiansen was filed August 8, 2018, yet his performance evaluation was not completed until January 14, 2019, more than five months later; the investigative report by Bath was not completed until February 7, 2019, the following month; and his employment termination followed on March 8, 2019, the month thereafter. His workers' compensation claim, filed on June 13, 2018, is separated by an even greater period of time.

We conclude Rocha has not met his burden to provide substantial evidence that County's reason for terminating his employment was untrue or pretextual as required. (See *Hersant*, *supra*, 57 Cal.App.4th at p. 1005; *Hicks v. KNTV Television, Inc.*, *supra*, 160 Cal.App.4th at p. 1003.)[13]

## DISPOSITION

The judgment is affirmed. County is entitled to its costs on appeal.

HILL, P. J.

WE CONCUR:

SMITH, J.

DE SANTOS, J.

---

[13] In sum, this opinion does *not* determine that Rocha was, in fact, not competently performing his position as senior staff analyst, or that the reasons underlying County's decision to terminate him were correct or true. Rather, in that regard, this opinion merely concludes Rocha did not demonstrate the trial court erred in granting County's summary judgment motion.